UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
MONICA LUNA SAAVEDRA, et al., :
:
                          Plaintiffs, : 17-CV-2180 (OTW)
:
            -against- : **OPINION AND ORDER**
:
MRS. BLOOM'S DIRECT, INC., et al., :
:
                        Defendants. :
:
---------------------------------------------------------------x

**ONA T. WANG, United States Magistrate Judge:**

In this action brought under the Fair Labor Standards Act (FLSA) and the New York Labor Law (NYLL), the parties reached a settlement that was approved by Magistrate Judge Peck in accordance with *Cheeks v. Freeport Pancake House*, 796 F.3d 199 (2d Cir. 2015). Plaintiff Monica Luna Saavedra now moves this Court to enforce the terms of the parties' agreement. For the reasons that follow, the letter motion is granted.

**I.    BACKGROUND**

Plaintiff Monica Luna Saavedra was employed by Defendants Mrs. Bloom's Direct, Inc., Mrs. Bloom's Mobile LLC, Oren Shapiro, and Maybelly Gamineo. (Complaint ¶ 1, ECF No. 1 ("Compl.")). Defendants Mrs. Bloom's Direct Inc. and Mrs. Bloom's Mobile LLC are flower businesses that sell flowers in Manhattan and have a business office in Elmsford, New York. (Compl. ¶ 2.) Defendants Shapiro and Gamineo are the owners, managers, or principals of the flower businesses. (Compl. ¶ 3.) Plaintiff alleged that she was employed as a flower cutter, flower arranger, water changer, counter attendant, and delivery worker, and that Defendants

failed to pay her the proper overtime compensation rates under the FLSA, failed to pay her proper overtime compensation rates under the NYLL, failed to provide her with certain notices required by the NYLL, and failed to provide her with wage statements under the NYLL. (Compl. ¶ 5, ¶¶ 77–93.) Plaintiff further alleged that Defendants unlawfully misappropriated and retained tips that she received from customers, and that Defendants required her to pay, without reimbursement, for certain "tools of the trade" required for her job, all in violation of the NYLL. (Compl. ¶¶ 94–102.)

The parties consented to Judge Peck's authority to conduct all proceedings and to order the entry of a final judgment, *see* 28 U.S.C § 636(c) and Fed R. Civ. P. 73, which was approved and ordered by Judge Schofield. (ECF No. 28.) The parties unsuccessfully engaged in mediation (ECF No. 35) and a bench trial was scheduled for December 5, 2017. (ECF No. 42.) But instead of trial, the parties reached a settlement the morning trial was supposed to start.[1] (Transcript of Proceedings Before Judge Peck on Dec. 5, 2017 at 2, ECF No. 54 ("Transcript").) The record of the settlement agreement between the parties, along with the fairness approval as required by *Cheeks*, is contained in the Transcript.

The parties agreed that the Defendants would pay Plaintiff "$25,000 over four months, starting January 5, 2018." (Transcript at 7:4–6.) Defendants agreed to make payments in monthly installments, with the total settlement made up of "one-third, $8,250 . . . for

---

[1] The same day the settlement was reached, Judge Peck also granted Plaintiff's Motion in Limine (ECF No. 40) precluding "Defendants from introducing or evincing trial testimony concerning Plaintiff's immigration status, social security numbers, and tax filing information." (ECF No. 52.)

2

attorneys' fees, $13,500 . . . on a W2 basis, and the balance . . . on a 1099 basis." (*Id.* at 7:10–13.) The effect of this structure meant that Defendants would "pay FICA" and any other taxes, as the "settlement amount [was] largely for wages . . . not paid on a W2." (*Id.* at 4:12–17.) The Court retained jurisdiction under the settlement. (ECF No. 53, *see* Transcript at 2:8–13.)

Months after the parties reached the settlement and the case was dismissed on consent, Plaintiff moved[2] this Court to enforce the terms of the settlement, alleging that she issued a formal notice of default on April 10, 2018 and that "Defendants' counsel [has] no present intention of making any payments under th[e] agreement." (Plaintiff's Letter to the Hon. Ona T. Wang, dated Apr. 23, 2018, ECF No. 59.)[3] Defendants responded to Plaintiff's letter, alleging that since Plaintiff had previously "obtained employment with [Defendants] under false pretenses and through the submission of phony and falsified documents," presumably as an undocumented person, Defendants required "Plaintiff's counsel submit to [Defendants] proper identification so that the terms of the settlement could be met." (Defendants' Letter to the Hon. Ona T. Wang, dated May 7, 2018, at 1, ECF No. 61.) Defendants' letter further claims that Plaintiff submitted IRS Forms W-4 and W-9 that it "knew or should have known were also falsified," that these forms contained taxpayer identification numbers (TINs) instead of Social Security numbers (SSNs), and that Plaintiff did not submit USCIS Form I-9. (*Id.*)

---

[2] Although the request to enforce the settlement was filed as a letter, the Court construes the request as a letter motion.

[3] Judge Peck retired on March 2, 2018, and this case was thus reassigned to me on April 30, 2018.

Defendants explained to this Court that they will not pay Plaintiff under the terms of the settlement "unless and until the proper forms and documentation are received" because "the Social Security Administration (SSA) requires them to first obtain a valid SSN from an employee prior to paying W-2 or 1099 wages and that a TIN is not acceptable as a substitute." (*Id.*) Defendants also expressed fear that, under 8 U.S.C. § 1324a, "employing or paying wages to an illegal alien without verifying work authorization status is a misdemeanor" and they thus may be subject to criminal penalties. (*Id.*) Defendants cross-moved this Court to nullify the settlement "if Plaintiff is indeed an illegal alien [*sic*]." (*Id.* at 2.)

## II. LEGAL STANDARD

As an initial matter, a "settlement agreement is a contract that is interpreted according to general principles of contract law," *Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007), and once a settlement is entered into, "the contract is binding and conclusive." *Id.* Importantly for the matter at issue here, "[w]hen a party makes a deliberate, strategic choice to settle, a court cannot relieve him of that choice simply because *his assessment of the consequences was incorrect*." *Id.* (citing *United States v. Bank of N.Y.*, 14 F.2d 756, 759 (2d Cir. 1994)) (emphasis added).

Court orders or settlements requiring payment of back wages under the FLSA to undocumented persons have been approved by the Second Circuit, which has explained that:

> [A]n order requiring an employer to pay his undocumented workers the minimum wages . . . for labor actually and already performed . . . does not itself condone that [immigration] violation or continue it. It merely ensures that the employer *does not take advantage of the violation by availing himself of the benefit of*

4

> *undocumented workers' past labor without paying for it* in accordance with minimum FLSA standards.

*Madeira v. Affordable Hous. Found.*, 469 F.3d 219, 243 (2d Cir. 2006) (emphasis added); *see Colon v. Major Perry Street Corp.*, 987 F. Supp. 2d 451, 461(S.D.N.Y. 2013) (discussing payment of wages to undocumented employees under the FLSA).

### III. DISCUSSION

Defendants advance two arguments: first, that Plaintiff must provide "valid and complete paperwork" in order for Defendants to pay Plaintiff under the terms of the settlement, and second, that the settlement should be nullified "if Plaintiff is indeed an illegal alien." (Def.'s Letter at 1–2). The Court finds both arguments to be without merit.

Taking the arguments out of order, the precedent in this Circuit is clear that the immigration status of a plaintiff-worker is irrelevant under the FLSA, and that payment under the terms of the settlement to an undocumented worker neither condones nor continues a violation of immigration law. *Madeira*, 469 F.3d at 243. This Court will not nullify or void a binding contract between two parties, especially when Defendants entered into the settlement already believing that Plaintiff was undocumented. (*See* Def.'s Letter at 1 ¶ 1.)

As to Defendants' first argument, there is nothing in the plain language of the parties' agreement that requires Plaintiff to provide these forms. The settlement requires Defendants to pay Plaintiff $13,500 "on a W-2 basis;" how Defendants do so and what paperwork they require is outside of the terms of the agreement. (Transcript at 7.) USCIS Form I-9, which

5

Defendants claim they need, is plainly not needed, as it is only used to verify "the identity and employment authorization of each *new* employee . . . ." DEP'T OF HOMELAND SEC., U.S. CITIZEN. AND IMMIG. SERVS., INSTRUCTIONS FOR FORM I-9, EMPLOYMENT ELIGIBILITY VERIFICATION (2017) (emphasis added). Further, Plaintiff informed the Court that they have provided Defendants with "a complete W-9 and W-4 for Plaintiff herself." (Plaintiff's Reply Letter to the Hon. Ona T. Wang, dated May 7, 2018, at 1, ECF No. 63.) Defendants claim that Plaintiff has provided a TIN instead of an SSN, but only a TIN should be needed for the settlement. *Cf. Palacios v. Penny Newman Grain, Inc.*, 14-CV-1804, 2015 WL 4078135, at *12 (approving class-action FLSA settlement with requirement that defendants produce "*either*" SSNs or TINs to plaintiff).

Finally, the Court is concerned about Defendants' good faith (or lack thereof) when they entered into the settlement. At least since September 29, 2017, if not earlier,[4] when Plaintiff filed her Motion in Limine, *see supra*, n.1, Defendants would have been on notice that Plaintiff is, potentially, undocumented. At the December 5, 2017 settlement conference, Defendants agreed to pay Plaintiff a portion of the total settlement amount on a W-2 basis, without *once* raising her immigration status as an issue. (Transcript at 9:5–8.) Only after five months, over which Defendants failed to perform the terms of their agreement, did they raise Plaintiff's immigration status before this Court, claiming that "Plaintiff obtained employment . . . under

---

[4] Indeed, if Defendants chose to hire Plaintiff without a USCIS I-9 form or failed to verify the underlying documentation supporting her I-9 form, they are likely estopped from using Plaintiff's purported immigration status as a shield from performing under the settlement, particularly where Defendants already "avail[ed] [themselves] of the benefit of [Plaintiff's] past labor without paying for it." *Madeira*, 469 F.3d at 243.

false pretenses and through the submission of phony and falsified documents." (Def's Ltr. at 1 ¶ 1.) It strains credulity to think that Defendants did not know Plaintiff's immigration status when they hired her, or that in the intervening time from March 12, 2015, when Plaintiff was first hired by Defendants, (Compl. ¶ 15,) to May 7, 2018 when Defendants filed their letter, Defendants "discovered" Plaintiff's alleged undocumented status.

Although the law in this Circuit is clear that a plaintiff's immigration status has no bearing on her rights to recover unpaid wages under the FLSA or New York Labor Law, *see Liu v. Donna Koran International, Inc.,* 207 F. Supp. 2d 191, 193 (S.D.N.Y. 2002), Defendants are attempting to use Plaintiff's alleged status to avoid performance of an agreement they previously negotiated and represented to this tribunal that they accepted. To countenance this argument would be to deny undocumented workers the protection of the FLSA and NYLL, permitting "abusive exploitation of workers" and "creating an unacceptable economic incentive to hire undocumented workers by permitting employers to underpay them . . . ." *Rosas v. Alice's Tea Cup, LLC*, 127 F. Supp. 3d 4, 9 (S.D.N.Y. 2015) (internal citations and quotations omitted). When plaintiffs work "in an industry that often pays minimal amounts . . . and often employs undocumented foreigners," refusal to pay a settlement on the basis of a plaintiff's immigration status poses a "real danger of undercutting the protective goals of the remedial statutes under which plaintiffs have sued" and settled. *Kim v. Kum Gang, Inc.*, 12-CV-6344, 2014 WL 2510576, at *2 (S.D.N.Y. June 2, 2014).

IV.     **CONCLUSION**

For the reasons discussed above, Plaintiff's motion is **GRANTED** and Defendants' cross-motion is **DENIED**.

Plaintiff is directed to submit a proposed judgment within seven days.

**SO ORDERED.**

_s/ Ona T. Wang_
Dated: New York, New York                                **Ona T. Wang**
May 23, 2018                                             United States Magistrate Judge