**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
MONICA LUNA SAAVEDRA, et al.,

                        Plaintiffs,            17-CV-2180 (OTW)

            -against-                      **OPINION AND ORDER**

MRS. BLOOM'S DIRECT, INC., et al.,

                        Defendants.
-------------------------------------------------------------x

**ONA T. WANG, United States Magistrate Judge:**

This case settled on December 5, 2017 for $25,000, with the settlement agreement and the Court's approval of the settlement placed on the record by my predecessor, the Honorable Andrew J. Peck.[1] (ECF 54). Despite the apparent final resolution of the matter, Defendants Mrs. Bloom's Direct, Inc., Mrs. Bloom's Mobile LLC, Oren Shapiro, and Maybelly Gamineo ("Defendants") have refused to comply with the settlement agreement or the Court's subsequent judgment enforcing the agreement. Instead, Defendants point to Plaintiff's alleged immigration status and argue that Defendants should not be required to "reward" Plaintiff by paying her unpaid overtime wages. (ECF 110 at 6, 11). Defendants now bring a motion to stay execution of the judgment, ECF 96, and a motion to set aside the judgment pursuant to Federal Rule of Civil Procedure 60(b), ECF 109. For the reasons discussed below, the Court **DENIES** both motions in their entirety.[2]

---

[1] Following Judge Peck's retirement, the case was re-assigned to me on April 30, 2018.
[2] All parties have consented to magistrate judge jurisdiction in accordance with 28 U.S.C. § 636(c). (ECF 28).

I.  **Background**

Plaintiff Monica Luna Saavedra ("Plaintiff") worked as a flower cutter and delivery worker at Defendants' flower shops from March 2015 through March 2017. Complaint ("Compl.") (ECF 1) ¶¶ 37, 39. Plaintiff brought this suit on March 26, 2017 against Defendants alleging, *inter alia*, violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") for failure to provide overtime compensation. Compl. ¶ 10. Plaintiff alleged that throughout the duration of her employment, she worked from 50-70 hours per week but was never paid the time and a half for overtime hours as required by the FLSA and NYLL. Compl. ¶¶ 52-53, 69. Plaintiff further alleged that Defendants failed to keep proper records of her time worked and that they required her to use a false name when working at Defendants' Duane Reade locations. Compl. ¶¶ 59-61.

Defendants allege that in July 2017, they learned from the Social Security Administration's E-Verify system that Plaintiff had provided them with a false social security card. (ECF 110 ¶ 8). After Defendants notified Judge Peck that they intended to present such evidence at trial, Plaintiff moved to exclude evidence of her immigration status, Social Security filings, and tax information; which motion was ultimately granted by Judge Peck. (ECF 40, ECF 52, ECF 110 ¶ 10). The bench trial started on December 5, 2017, but later that day, the parties reached a settlement. (ECF 53). Judge Peck approved the settlement agreement on the record as fair and reasonable under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). (ECF 54). The Court retained jurisdiction to enforce the settlement agreement. (ECF 54).

On April 30, 2018, Plaintiff notified me that Defendants were refusing to comply with the settlement agreement and had not made any settlement payments. (ECF 59). In response, Defendants explained that they would not make any settlement payments until Plaintiff provided them with a valid Social Security number because paying wages to an "illegal alien" would violate the law. (ECF 61). On May 24, 2018, the Court issued an opinion granting Plaintiff's motion to enforce the settlement agreement. (ECF 68). In rejecting Defendants' arguments that Plaintiff's immigration status nullified the settlement agreement, the Court found that "the precedent in this Circuit is clear that the immigration status of a plaintiff-worker is irrelevant under the FLSA." *Id*. at 5 (citing *Madeira v. Affordable Hous. Found*., 469 F.3d 219, 243 (2d Cir. 2006)). The Court further noted that the settlement agreement itself contained no provisions making the settlement payments contingent upon Plaintiff providing her immigration and Social Security documents. *Id*. at 6. A judgment subsequently issued against Defendants on May 25, 2018 for the settlement amount of $25,000 plus post-judgment interest. (ECF 70).

Around July 11, 2018, Defendants sued Plaintiff in New York Supreme Court, Westchester County, alleging that Plaintiff had fraudulently misrepresented her immigration status at the time Defendants hired Plaintiff. *See Mrs. Bloom's Direct Inc. v. Saavedra*, No. 18-CV-8041 (OTW), ECF 1-1.[3] Defendants then filed a motion in this matter on January 31, 2019 to stay execution of the judgment, and subsequently a motion on April 5, 2019 to set aside the judgment. (ECF 96, 109). The Court heard from the parties at the March 6, 2019 status

---

[3] Plaintiff removed that case to this Court, where it was deemed related to the underlying matter and assigned to me.

conference regarding their positions on why the judgment should or should not be enforced. (ECF 107).[4]

## II. Motion to Vacate

Defendants seek relief under Federal Rule of Civil Procedure 60(b) from the Court's judgment, ECF 70, enforcing the settlement agreement on the grounds that (1) Plaintiff's violation of the Immigration Reform and Control Act ("IRCA") pre-empts her ability to recover for any FLSA or NYLL claims, (2) Plaintiff should not be permitted to benefit from the settlement agreement because she offered false testimony at trial regarding her knowledge of Defendants' employees, (3) Plaintiff admitted at trial that she received overtime compensation from Defendants, and (4) Judge Peck's preclusion of evidence concerning Plaintiff's alleged false papers "forced" Defendants to agree to the settlement. (ECF 110).

### A. Legal Standard

Rule 60(b) permits relief from a judgment if any of the following reasons apply:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based

---

[4] At the conference, Plaintiff's counsel expressed concern that Defendants' multiple filings post-judgment were an attempt to "intimidate" Plaintiff into forgoing enforcement of her settlement agreement, especially after Defendants publicly filed Plaintiff's Social Security card and tax documents on the docket. *See* Mar. 6, 2019 Tr. at 9:19-23.

4

> on an earlier judgment that has been reversed or vacated; or
> applying it prospectively is no longer equitable; or

>> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

In addition to satisfying one of the six bases for relief in Rule 60(b), courts also generally require a showing of "highly convincing" evidence, good cause for not acting sooner, and an absence of undue hardship on other parties. *See Kotlicky v. U.S. Fidelity & Guar. Co.*, 817 F.2d 6, 9 (2d Cir. 1987). The Second Circuit has warned that Rule 60(b) relief is "extraordinary judicial relief" that should only be granted in "exceptional circumstances." *See Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008). "[W]hen parties agree to a disposition of a case without proceeding to trial, 'the burden to obtain Rule 60(b) relief is heavier.'" *Edelstein v. 360 Sports Mgmt., Inc.*, No. 15-CV-2077 (PAE), 2017 WL 1434476, at *2 (S.D.N.Y. Apr. 21, 2017) (quoting *Nemaizer v. Baker*, 793 F.2d 58, 63 (2d Cir. 1986)); *see also Horn Waterproofing Corp. v. Bushwick Iron & Steel Co.*, 488 N.E.2d 56, 58 (N.Y. 1985) ("The law wisely favors settlements, and where there is a real and genuine contest between the parties and a settlement is had without fraud or misrepresentation for an amount determined upon as a compromise between the conflicting claims such settlement should be upheld."). Whether to ultimately grant relief under Rule 60 is left to the "sound discretion of the district court." *See Nemaizer*, 793 F.2d at 61.

### B. <u>Violation of the IRCA Does Not Nullify a Valid Settlement Agreement</u>

Defendants first argue that Plaintiff's judgment enforcing the settlement agreement should be vacated under Rule 60(b)(3) because permitting Plaintiff to enforce the settlement

5

agreement would be tantamount to condoning violation of U.S. immigration laws. (ECF 110 at 8). In the Court's opinion granting Plaintiff's motion to enforce the settlement agreement, the Court already rejected this argument, noting that "payment under the terms of the settlement to an undocumented worker neither condones nor continues a violation of immigration law." (ECF 68 at 7). While Defendants acknowledge that Plaintiff's immigration status is irrelevant to recovery for wage-and-hour violations, Defendants now argue that Plaintiff's violation of the IRCA,[5] in particular, should bar any recovery under the FLSA or NYLL. (ECF 110 at 8-9).

In support, Defendants cite *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137 (2002) for the proposition that employees who use fraudulent employment papers should not be entitled to backpay as it would be seen as condoning violations of the ICRA. *Id*. at 8. *Hoffman* stands for the more limited proposition, however, that employees who violate the IRCA should not be entitled to receive backpay when their employer violates the National Labor Relations Act ("NLRA") by terminating their employment. The Supreme Court specifically found that because the NLRA's remedy is to award backpay for the time not worked and/or to reinstate employment, permitting relief under the NLRA would be granting the employee a windfall and requiring employers to violate the IRCA by rehiring, or maintaining, employment of undocumented workers. *Hoffman*, 535 U.S. at 140; *see also Madeira*, 469 F.3d at 244 (finding that pre-emption of the NLRA by the IRCA's requirement that undocumented workers be

---

[5] The IRCA prohibits employers from knowingly employing undocumented workers and criminalizes use of fraudulent documents by aliens to obtain employment. *See Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 148 (2002).

terminated is different from failure to pay proper wages under the FLSA, which is not required or authorized by any law).

In contrast, circuits have been clear that *Hoffman* did not give employers *carte blanche* to exploit undocumented workers by violating wage-and-hour laws with impunity.[6] *See Lucas v. Jerusalem Cafe, LLC,* 721 F.3d 927, 937 (8th Cir. 2013) (finding Congress did not intend for the IRCA to remove FLSA protections from undocumented workers); *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1308 (11th Cir. 2013) (holding unpaid wage claim "does not depend on [plaintiff's] immigration status" even when false Social Security numbers were used); *Madeira*, 469 F.3d at 243 (noting wage violations are different from IRCA violations and cannot be ignored to let employers "take advantage" of undocumented workers); *cf. Pineda v. Kel-Tech Const., Inc.*, 832 N.Y.S.2d 386, 394-95 (N.Y. Sup. Ct. 2007) (holding that IRCA does not pre-empt NYLL). To hold otherwise would actually encourage employers to violate the IRCA by hiring undocumented workers whom they could pay less than the law permits. *See Flores v. Amigon*, 233 F. Supp. 2d 462, 464 (E.D.N.Y. 2002) (finding enforcement of the FLSA "actually furthers the goal of the IRCA"). Accordingly, Plaintiff was entitled to enforce the parties' settlement agreement despite the existence of any IRCA violation.[7]

---

[6] Defendants fail to offer any case law where an undocumented worker was barred from recovering unpaid wages for hours worked due to her violation of the IRCA. Instead, Defendants only proffer that the law does not "seem to preclude the finding that . . . such an employee may not be entitled to recovery." (ECF 110 at 9).

[7] Defendants' cited cases all pertain to Court orders interpreting statutory coverage of undocumented workers. Here, the challenged judgment does not concern the IRCA but is merely enforcing a contractual settlement agreement. Defendants have provided no case law that an alleged IRCA violation nullifies any contract for which the employee is a party. *Cf. U.S. v. Alabama*, 691 F.3d 1269, 1292-93 (11th Cir. 2012) (enjoining state law that nullified "unauthorized" aliens' contracts because such an act is "extraordinary and unprecedented" and is akin to expulsion, a right reserved to Congress).

### C. Plaintiff's Testimony, Even if False, Does Not Nullify a Valid Settlement Agreement

Defendants next argue that Plaintiff committed fraud by falsely testifying at trial and providing false affidavits. (ECF 110 at 9-10). The lone example provided by Defendants is Plaintiff's testimony at trial that she did not know two of Defendants' employees. *Id*. To contest that assertion, Defendants attached two new affidavits from those employees alleging that they knew Plaintiff and that Plaintiff's claims against Defendants were false. (ECF 110-5, 110-6).

Although typically submission of new evidence would support a request for relief under Rule 60(b)(2)'s newly discovered evidence prong, Defendants categorize this request as relief under Rule 60(b)(3)'s misconduct prong. (ECF 110 at 10). Correctly so, because the newly submitted affidavits are not new evidence. Both of the affiants are long-time employees of Defendants, and the affidavits do not state any new information that was not known at trial. *See* Fed. R. Civ. P. 60(b)(2) (only allowing for new evidence that "with reasonable diligence, could not have been discovered in time to move for a new trial").

As to the claims of fraud, misrepresentation, or misconduct, Defendants have not presented an argument why the *settlement agreement* entered into with Plaintiff was a product of fraud, misrepresentation, or misconduct such that relief from judgment should be granted. Defendants only reference a potential misrepresentation at trial, *i.e.*, Plaintiff's testimony regarding her knowledge of two of Defendants' employees. Unlike a case where the factfinder's judgment potentially relied on perjured testimony, the Court issued no such judgment here because Defendants voluntarily entered into a settlement agreement with Plaintiff *before* the Court could rule on the credibility of Plaintiff's testimony and/or claims.

Defendants do not assert that the contents of the settlement agreement were misrepresented to them or that the settlement negotiations were made in bad faith. *See Jordan v. Verizon Corp.*, No. 02-CV-10144 (GBD), 2007 WL 4591924, at *10 (S.D.N.Y. Dec. 27, 2007) (rejecting fraud argument where there was no evidence that the agreement's terms were misrepresented or that the party had no intention of honoring the agreement when negotiated).[8] Accordingly, in the absence of evidence of fraud, misrepresentation, or misconduct to obtain Defendants' consent to the settlement, Rule 60(b)(3) relief here is not warranted.

    D. **Evidence that Plaintiff Received Overtime Pay Does Not Nullify a Valid Settlement Agreement**

Defendants next argue for relief under Rule 60(b)(5), alleging that Defendants had previously paid Plaintiff all owed overtime compensation. (ECF 110 at 10-11). Rule 60(b)(5) permits relief from judgment when "the judgment has been satisfied, released, or discharged." Defendants point to Plaintiff's testimony that she had clocked in under another employee's name when working overtime hours and then received the overtime pay in cash from that employee when he was paid by Defendants. *Id*. at 11. Defendants argue that this testimony shows that Plaintiff has already received overtime compensation "well in excess of the Judgment." (ECF 110 at 11).

This argument, like the previous one, is attempting to relitigate an already-settled case by arguing that Plaintiff's testimony does not support her claim for damages. Whether Plaintiff was fully compensated by Defendants for overtime work is an issue of fact that could have been

---

[8] At this point, the Court questions whether <u>Defendants</u> ever intended to honor the settlement agreement when they entered into it, considering that all of the facts and arguments raised by Defendants in support of their motion were already known to them at the time they agreed to settlement.

raised at trial by Defendants. *See Philips Lighting Co. v. Schneider*, No. 05-CV-4820 (SLT) (MDG), 2014 WL 4274182, at *5 (E.D.N.Y. Aug. 28, 2014) ("a Rule 60(b) motion cannot be used to raise new claims or defenses or present new arguments that could have been raised earlier"); *Ptak Bros. Jewelry, Inc. v. Ptak*, No. 06-CV-13732 (CM), 2011 WL 253424, at *3 (S.D.N.Y. Jan. 25, 2011) ("[A] party may not use a Rule 60 motion as a means to relitigate a case."). Rather than rely on this defense or call this other employee to testify at trial,[9] Defendants made the strategic decision to enter into a settlement. "Rule 60(b) does not exist to provide a remedy for [] counsel's tactical decisions," including the decision to settle a case rather than challenge Plaintiff's alleged damages at trial. *See Lorusso v. Borer*, 260 F. App'x 355, 357 (2d Cir. 2008).

Defendants' cited testimony of Plaintiff also does not seem to support Defendants' claim that Plaintiff has not been damaged. Plaintiff's testimony that she was paid overtime under another employee's name is consistent with the Complaint's allegations that Defendants wrote her a check for her regular wages but gave her overtime wages in cash. Compl. ¶¶ 52-53. Plaintiff's claim of injury is not that she was provided no overtime compensation, but that she was not provided the full overtime compensation owed her under the law. Defendants have provided no evidence that Plaintiff was paid the full overtime wages owed such that she should not be entitled to any damages. Combined with Defendants' admission that they have not paid any of the settlement amount post-judgment, ECF 61, Defendants have provided no evidence that the judgment has been satisfied.

---

[9] Defendants allege that this employee is Mr. Hernandez, for whom Defendants submitted an affidavit in connection with their Rule 60(b) motion. (ECF 110-5). As his affidavit states, Mr. Hernandez had been a long-time employee for Defendants, so it would not have been difficult for Defendants to locate him as a potential witness.

### E. Disagreement with an Evidentiary Ruling Does Not Nullify a Valid Settlement Agreement

Defendants further argue that the judgment should be set aside under Rule 60(b)(1) for mistake because Judge Peck erred by precluding evidence of Plaintiff's allegedly fraudulent Social Security card. (ECF 110 at 12). Defendants argue that the card was relevant, and that Judge Peck's blocking this evidence through granting Plaintiff's motion *in limine* "effectively 'forced' a settlement."[10] *Id*. at 14. Plaintiff responds that Defendants' Rule 60(b)(1) motion is barred for untimeliness. (ECF 113 at 4-5).

Rule 60(b)(1) motions must be brought "no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). This limitation is "absolute." *See Warren v. Garvin*, 219 F.3d 111, 114 (2d Cir. 2000). Unlike Defendants' other arguments, which all arguably challenge the settlement agreement's enforcement via the Court's judgment, this Rule 60(b)(1) request for relief attacks a specific Court order, namely Judge Peck's grant of Plaintiff's motion *in limine*. (ECF 52).[11] Judge Peck granted the motion *in limine* on the same day that he entered the order of dismissal of the case, December 5, 2017.

---

[10] Even if the Rule 60(b)(1) request was timely, Defendants fail to show how Judge Peck's evidentiary ruling "forced" them into a settlement. If Defendants truly believed that the ruling was a legal error, they could have continued the trial and preserved the issue for appeal, which Defendants declined to do. *See U.S. v. Bank of New York*, 14 F.3d 756, 759 (2d Cir. 1994) ("when a party makes a deliberate, strategic choice to settle, she cannot be relieved of such a choice merely because her assessment of the consequences was incorrect."). Nor have Defendants cited any case law rebutting any of the number of cases showing that evidence of Plaintiff's immigration status is not relevant to a case regarding unpaid wages. *See, e.g., Rosas v. Alice's Tea Cup, LLC*, 127 F. Supp. 3d 4, 9-10 (S.D.N.Y. 2015) (finding evidence of plaintiff's immigration status was not relevant to the plaintiff's overtime pay and wage records claims); *Flores*, 233 F. Supp. 2d at 464 (excluding as not relevant plaintiff's social security card and immigration status in FLSA overtime wages case).

[11] To the extent Defendants may also be applying Rule 60(b)(1) to challenge the settlement agreement, Defendants have proffered no evidence that they did not understand the terms of the agreement. *See Ovadiah v. New York Ass'n for New Americans*, Nos. 95-CV-10523 (SS), 96-CV-330 (SS), 1997 WL 342411, at *5 (S.D.N.Y. June 23, 1997) (Sotomayor, D.J.) (finding agreement to settlement on the record "undermine[s] any claim by him of mistake or surprise under Rule 60(b)(1)").

(ECF 52, 53).[12] Defendants filed their Rule 60 motion on April 5, 2019, more than one year after the issuance of the contested order. (ECF 110). Accordingly, Defendants' Rule 60(b)(1) request is untimely.

III. **Motion to Stay**

Defendants also moved to stay execution of the judgment, claiming that enforcing the settlement would constitute unjust enrichment in light of Plaintiff "not [being] the type of alien the immigration laws are designed to protect." (ECF 96 at 3). In support, Defendants assert identical arguments raised in their Rule 60 motion, *i.e.*, condoning IRCA violations and Plaintiff's false testimony. *Id*. at 1-3. Plaintiff, in turn, argues that Defendants are merely trying to relitigate the Court's previous decisions to preclude immigration evidence and to enforce the judgment. (ECF 102 at 8).

Federal Rule of Civil Procedure 62 allows for a stay of a judgment upon the party providing "a bond or other security" and takes effect once the court approves the bond or security. Here, Defendants have not presented any bond or security before the Court and have provided no reason why a stay should be issued absent such security. *See Frankel v. ICD Holdings S.A.*, 168 F.R.D. 19, 21 (S.D.N.Y. 1996) (needing to examine the movant's "justification for granting a stay absent security as well as the movant's financial position").

Although the Court can order security to be provided, stays are generally granted to permit time for the parties to resolve a pending appeal or post-trial motion. *Cf. In re Nassau Cty*

---

[12] Although a Rule 60(b) motion may not be ripe until the order is final, Judge Peck's evidentiary order became final once the action was dismissed and the case closed. *See Smith ex rel. Smith v. Half Hollows Hill Cent. Sch. Dist.*, 298 F.3d 168, 171-72 (2d Cir. 2002).

*Strip Search Cases*, 783 F.3d 414 (2d Cir. 2015); *Frankel*, 168 F.R.D. 19. There are no pending post-trial motions or proceedings here to warrant a stay except Defendants' Rule 60(b) motion to set aside the judgment. Because that motion is now resolved, the parties are not awaiting any further judicial action, and Defendants have offered no other reason to further delay enforcement of the settlement. Defendants have exhausted the Court's resources and patience in their attempts to avoid honoring their agreed-upon settlement with Plaintiff. Accordingly, Defendants' motion to stay is **DENIED**.

IV. <u>Conclusion</u>

For the foregoing reasons, Defendants' motion to stay and motion to set aside the judgment are both **DENIED**. The Clerk of Court is directed to close ECF 96 and ECF 109. The Clerk is directed to also close ECF 27 in the related case, Case No. 18-cv-8041, which is a duplicate filing of the motion filed in this case.

**SO ORDERED.**

Dated: September 27, 2019
New York, New York

_s/ Ona T. Wang_
**Ona T. Wang**
United States Magistrate Judge